85 So.2d 142 (1955)
Edward W. FISHBACK, Appellant,
v.
B.W. YALE, Appellee.
Supreme Court of Florida. En Banc.
December 14, 1955.
Rehearing Denied February 14, 1956.
Charles E. Davis of Fishback, Williams, Davis & Dominick, Orlando, for appellant.
Wilson Sanders of Sanders, McEwan & Berson, Orlando, for appellee.
McNEILL, Associate Justice.
Appellant, as plaintiff below, filed his complaint against the Appellee, and alleged (1) that about the 10th day of January, 1953, plaintiff was riding in a Cadillac automobile being driven by the defendant in a southerly direction on a dirt road, to-wit, the Long Bluff Road, to a gate across said road where it intersects the north boundary of A.A. Fiezl's land where it adjoins the Tosahatchee Game Preserve; (2) that defendant stopped his automobile approximately ten feet from the gate, and plaintiff got out to open a combination lock which secured the gate; (3) that while plaintiff was unlocking the gate, as aforesaid, the defendant negligently and carelessly drove and operated his car into and against plaintiff, and as a result thereof plaintiff's left leg was crushed and pinned against a fence post and plaintiff was injured as therein alleged;
Defendant's motion to dismiss, to strike and for definite statement was overruled and defendant by his answer admitted paragraph 1 of the complaint, and all of paragraph 2 except the words, "approximately ten feet from the gate" which he denied; and denied the allegations of paragraphs 3 and 4 of the complaint; charged that at the time and place alleged plaintiff so negligently and carelessly conducted himself that he contributed to the accident and to his injuries, if any; and by paragraph 6 *143 of the answer he alleged, "that at the time of the alleged incident the plaintiff, Edward W. Fishback and Robert McEwan were on a hunting trip on the Tosohatchee Game Preserve and the defendant, B.W. Yale, had accompanied the said plaintiff and Robert McEwan purely for the ride. The said B.W. Yale not being a member of said Game Preserve and therefore not being able to participate in the hunting trip. The plaintiff, Edward W. Fishback, and Robert McEwan met the defendant, B.W. Yale, at Fort Christmas and rode with the said B.W. Yale to the hunting camp at the Game Preserve. At the time of the alleged incident the said Robert McEwan and B.W. Yale were returning from the hunting camp to Fort Christmas and the said Edward W. Fishback was being transported by the said B.W. Yale as a guest passenger in the automobile of said defendant. That as part of said transportation from the hunting camp to Fort Christmas it was necessary to pass through the gate referred to in the complaint, which gate was locked with a combination lock, the combination of which was known only to said members of said Game Preserve. In order to complete the act of transportation in which the said B.W. Yale was engaging it was necessary to pass through said gate in order to continue on to Fort Christmas. That under the circumstances alleged in the complaint, the defendant B.W. Yale cannot be held liable to the plaintiff, Edward W. Fishback, except for gross negligence."
On April 13, 1954, plaintiff moved to strike the sixth paragraph of the defendant's said answer and defendant moved for summary judgment upon the depositions of the plaintiff, the defendant and Robert McEwan theretofore filed. By order of May 31, 1954, plaintiff's said motion to strike paragraph 6 of defendant's answer was denied, and on the same day defendant's motion for summary judgment was granted and final summary judgment was rendered in favor of defendant. From this judgment this appeal was taken, and appellant assigns as error that the trial court erred: In granting defendant's motion for summary judgment; and in entering said judgment; in finding defendant liable to plaintiff only for gross negligence; in finding there was no evidence legally sufficient to sustain a charge of gross negligence; in denying plaintiff's motion to strike defendant's sixth answer; in finding for defendant and against plaintiff and in finding plaintiff was a guest passenger in the automobile of the defendant.
It appears from the record that the judgment appealed from was rendered on the depositions of the plaintiff, the defendant and one Robert McEwan and from these depositions it appears that plaintiff and Robert McEwan were members of the Tosahatchee Hunting Club but defendant was not a member thereof; that only members of this club could hunt on the Club's preserve or property; that by arrangement between McEwan and defendant, defendant met plaintiff and McEwan at Fort Christmas where plaintiff and McEwan at defendant's invitation transferred into his Cadillac and defendant drove them to plaintiff's hunting camp at the hunting club where they transferred to plaintiff's jeep which plaintiff drove into the swamp where plaintiff and McEwan might hunt while defendant remained in the jeep until they returned thereto; whereupon, they then drove in plaintiff's jeep back to plaintiff's camp and there plaintiff and McEwan assisted defendant into defendant's car, and with defendant driving they all started back to Fort Christmas where plaintiff had left his car, and in order to leave the hunting club property it was necessary to open a gate located across the road they were traveling locked with a combination lock, the combination whereof was known only to members of the club and on arrival at the gate, defendant was driving his car, witness McEwan was (as stated by plaintiff and McEwan) sitting in the middle and plaintiff on the right side; plaintiff dismounted, unlocked the gate which swung open in the opposite direction from the car; it was dark and the headlights of the car were turned on, the car was stopped three to ten feet from the gate, and plaintiff was standing two or three feet off of the road to the right of the car; while plaintiff was unlocking the gate *144 witness McEwan and defendant were talking and witness McEwan did not realize the car had moved until it struck plaintiff. The road over which the car was being driven was a dirt road and not a public road and was wet in spots; plaintiff and witness McEwan did not pay defendant anything for transporting them to and from the hunting club and at the time of plaintiff's injury he and witness McEwan were being transported by defendant back to plaintiff's car at Fort Christmas and plaintiff testified that the car was headed straight to the gate; that he saw the car coming toward him rapidly and veering to the right; that he made an effort to move as fast as he could but before getting further than raising his left leg it was struck; that he had known the defendant about a year; that he had been places with him before; that no one was allowed to hunt on Tosahatchee except members; that defendant was not going to hunt there; and that the defendant just went along for the ride.
Witness McEwan testified in substance as above outlined except he stated they stopped around six feet from the gate and plaintiff got out to unlock the combination lock; that defendant turned the Cadillac so that plaintiff could see the combination better; that he turned facing defendant and was talking to him and didn't know the car had even moved until the plaintiff yelled "back up"; that he didn't know what action defendant took in connection with the accident so far as driving the car was concerned; that he didn't remember any shifting of the gears; that plaintiff was out of the car not more than two minutes working the combination and had his back toward the car; that he and plaintiff had planned to go out to roost some turkeys; that defendant liked to go in the woods; that he invited defendant to go along because defendant was a good friend of the witness and when asked, "Just a matter of mutual pleasure?" The witness answered, "That's right." When asked what kind of road it was, he answered, "It is a sand road. It's covered with grass most of the time. Not very deep. There's ruts, but not what you would call deep ruts. It's fairly smooth"; and further stated it was a private road and that you had to be a member of the club to know the combination of the lock; that the car was turned off toward the post because the lock was on that side and the defendant turned it towards plaintiff so he could see the combination.
Defendant Yale in his deposition testified in substance that the boys Ed and Bob got in his car at Christmas and drove down to Tosahatchee, went to Ed's camp and transferred to Ed's jeep; that Ed and Bob wanted to go look for a turkey roost; that he sat in the jeep until they returned after dark; that it was very cold; that when plaintiff and witness McEwan returned to the jeep from the woods they went back to plaintiff's camp. The appellant and McEwan put witness in his car and they drove possibly a hundred yards to the gate; that the car did not have time to warm up; that he turned his headlights up to the lock and plaintiff pushed the gate back and in order to turn through the gate he had to back his car; that he was close to and facing plaintiff; that he pulled his car into reverse and as he had to pull through "drive", probably because the grease in the hydromatic was cold, the car jumped ahead; that he realized it instantly and before plaintiff had yelled defendant had it in reverse and backed up; that it hit plaintiff's leg against the post; that witness McEwan brought plaintiff to the car and held him in his lap while defendant drove to the hospital; that if he had headed straight for the gate he would have just gone ahead but plaintiff had to have the benefit of the lights so he turned the car close to the lock so plaintiff could work the combination; that the car was stopped three to five feet from the gate post; that the light would not have been effective at a longer range; and defendant further testified that witness McEwan was on the lefthand side of the back seat sitting back of defendant and he and witness McEwan were "just talking" and when asked if he turned around to talk to McEwan, he answered, "Possibly. When I would, I *145 didn't turn all the way around. I couldn't say whether I was talking to Bob or to Ed, I don't know. I certainly didn't turn around, no." He then said he realized the car was moving the minute he shifted; that the gear shift lever worked across. The car was in neutral and in order to shift into reverse it was necessary to pass through drive and low gear, and when asked "How did three of you happen to be riding in your car?" defendant stated, "Well, I asked the boys to ride with me. Met them at Christmas and I said I would take them down there and they accepted and got in the car and we drove down in my car." The witness McEwan requested him to go with them, to meet them at Christmas and take them into the woods; that defendant could be of help in blowing the horn in getting them out of the woods, and then said "not walking, as you understand. And understand the rules of the club, too, I wasn't privileged to hunt. Well, I couldn't have anyway." He further testified that his car was four years old, he had driven all over the country, eighty-one thousand miles, including ninety miles in the mountains in a pouring rain and had never made a mistake while driving it and when asked, "Now, you were out there at that hunting preserve at the invitation of Mr. McEwan? Is that the way you got started?" The witness answered, "No. No, Mr. McEwan asked if I wanted to meet them at Christmas. The inference was, I would drive them from Christmas and they could go with me into the woods and I was glad to do it. I thought I was rendering a service."
The record discloses that at the time and place of appellant's injury defendant was operating his automobile on a private road, not a public highway or street and appellant contends that for this reason Section 320.59, Florida Statutes, F.S.A. (known as the Florida Guest Statute) is not applicable because said Section 320.59 is by Section 320.01(1), Florida Statutes, F.S.A., restricted and limited in its application to automobiles when operated on a public highway or street. Section 320.59, Florida Statutes, F.S.A., reads,
"No person transported by the owner or operator of a motor vehicle as his guest or passenger, without payment for such transportation, shall have a cause of action for damages against such owner or operator for injury, death or loss, in case of accident, unless such accident shall have been caused by the gross negligence or willful and wanton misconduct of the owner or operator of such motor vehicle, and unless such gross negligence or willful and wanton misconduct was the proximate cause of the injury, death or loss for which the action is brought; provided, that the question or issue of negligence, gross negligence, and willful or wanton misconduct, and the question of proximate cause, and the issue or question of assumed risk, shall in all such cases be solely for the jury; provided that nothing in this section shall apply to school children or other students being transported to or from schools or places of learning in this state."
This section was first enacted as Chapter 18033, Acts of 1937, and was later brought forward in the compilation or codification of our statutes and now appears as Section 320.59 in identically the same form as originally enacted.
In Koger v. Hollahan, 144 Fla. 779, 198 So. 685, 687, 131 A.L.R. 886, the Court in considering this guest statute said, "The sole purpose of the legislature in passing the act, as we construe the simple language which they used, was to prevent one who traveled with another in a car as a guest, or without compensation, from recovering unless it was proven that the driver of the car was guilty of the greater degree of negligence. Evidently, they were concerned with the propriety and fairness of the recovery by a free rider, whether invitee or `hitch hiker', for ordinary negligence of a driver and sought to confine the recovery of one who traveled without charge to damages caused by negligence that was gross or misconduct that was wanton. When the act is considered as a whole the predominant *146 feature is the degree of negligence and not the relationship between the driver and the owner * * *."
Section 320.01, Florida Statutes, F.S.A., in part reads,
"In construing these statutes, when applied to motor vehicles, where the context permits, the word, phrase or term:
"(1) `Motor vehicle' includes automobiles, motorcycles, motor trucks and all other vehicles operated over the public highways and streets of this state and propelled by power other than muscular power, but does not include traction engines, road rollers and such vehicles as run only upon a track. * * *"
This section 320.01 was first enacted substantially in its present form as Section 1 of Chapter 7275, Acts of 1917, entitled,
"An Act to License and Regulate the Running of Motor Vehicles on the Public Highways, and to Provide for the Registration Thereof; to Fix the Amount of Annual License to be Paid into the State Treasury; to Provide for the Distribution Among the Several Counties of the Fund Thus Created and the Expenditure of Same on State and State Aid Roads and Bridges; to Provide Penalties for the Violation of Certain Sections Thereof; to Amend Chapter 5437, Acts of 1905, Entitled `An Act Regulating the Running of Automobiles or Motor Vehicles on the Public Roads or Highways in the State of Florida;' and also to Amend Chapter 6881, Acts of 1915 Entitled `An Act to Amend Chapter 6212 of the Acts of the Legislature of 1911, Same Being Entitled, "An Act to License Automobiles and Other Motor Driven Vehicles Using the Public Roads or Highways of the State of Florida, Either for Hire or Otherwise."'"
This Chapter 7275 originally consisted of twenty-nine sections and had to do exclusively with the registration, licensing, equipment, dealers' registration tags, disposition of license moneys, counterfeiting tags, failure to register motor vehicles, license plates how displayed, regulation of for-hire vehicles, maximum weight, length, width and height, rough surface wheels prohibited, crossing railway tracks, regulation of traffic on state roads, appointment of License Inspectors, denial, suspension or revocation of license, penalties for violation, and many other regulator and licensing sections, and did not purport to limit or regulate the right of a guest to recover damages from the owner or operator of a motor vehicle as is provided for in our guest statute, supra, or otherwise. Our guest statute is clear and unequivocal in its language and does not make the slightest reference to public highways or streets but is couched in language indicating a clear legislative intent that it shall apply to automobiles operated on a private road or way as well as on a public highway or street and since this guest statute was not enacted until twenty years after the enactment of the aforesaid Chapter 7275 and was included in Chapter 320, Florida Statutes of 1953, F.S.A., only in the compilation or codification of our statutes, and because Section 320.01 above quoted does not by its terms apply or purport to apply to every section of said Chapter 320, but provides that in construing these statutes when applied to motor vehicles "where the context permits" (emphasis supplied) "the word, phrase or term: (1) `motor vehicle' includes automobiles * * * operated over the public highways and streets of this state * * *", we are unable to agree with appellant's contention that this guest statute is by Section 320.01 limited or restricted to automobiles when operated upon a public highway or street. To give to this guest statute the construction contended for would lead to many odd and inequitable situations. By way of illustration, if the owner of an automobile, while operating it on a public highway with two guests A and B, should find the highway blocked or washed out, making it necessary to leave the highway and detour a hundred yards over private property and while making such detour guest A was injured *147 by the simple negligence of such owner guest A would have a cause of action for simple negligence, but if the host was before leaving the highway onto such detour or immediately upon returning onto the highway guilty of simple negligence and thereby guest B was injured, guest B would have no cause of action against such operator. We are unable to agree that the legislature in the enactment of our guest statute intended to limit or restrict its application in such manner as to create situations such as above illustrated, or that it is so limited or restricted by Section 320.01, Florida Statutes, F.S.A., above quoted. See McMillan v. Nelson, 149 Fla. 334, 5 So.2d 867-870.
We are not aware of any decision of this Court and none had been cited holding that Section 320.59, Florida Statutes, F.S.A., was not applicable to cases wherein an automobile guest sought to recover damages from his host for the negligent operation by the host of his automobile on a private road or place, except in Sproule v. Nelson, Fla., 81 So.2d 478, where the following language was used:
"From F.S. Sections 320.59 and 320.01(1) F.S.A. it appears that the guest statute will be invoked only when the motor truck is operated over the public highways,"
but by order of September 8, 1955, this quoted language was stricken from that opinion and this order will doubtless appear in a later permanent volume of the Southern Reporter.
Appellant next contends that he was not a guest of appellee at the time of his injury and was not then in appellee's automobile but had dismounted therefrom to open a gate. From the evidence adduced before the trial judge when he entered the judgment herein appealed from, a full resume whereof is, for the purpose of clarity set forth in the fore part of this opinion, it appears without dispute that at appellee's request appellant had been transported by appellee in his automobile from Fort Christmas to Tosahatchee Hunting Club and to appellant's hunting camp thereon in order that appellant and witness McEwan might hunt or search for turkey roosts while appellee remained in appellant's jeep and that on leaving said hunting camp on their return trip to Fort Christmas where appellant had left his car appellant was riding in the car of appellee driven by appellee until they reached a gate across the road on which they were traveling when appellant dismounted to release the combination lock on the gate and to open the gate in order that appellant, appellee and witness McEwan might continue their contemplated journey to Fort Christmas. It further appears from the record that neither appellant nor witness McEwan paid appellee anything of value for transporting them to and from appellant's hunting camp; that appellee was not physically able to hunt and not being a member of the hunting club was not permitted to hunt on its preserve or property and it was never contemplated by any of the parties that he would hunt on the property. The journey was not made for the transaction of any business in which appellant and appellee were mutually interested or for the transaction of any business in which appellee alone was interested and no benefit was conferred upon or received by appellee other than such as is incidental to hospitality, goodwill and the like, and the only reason plaintiff dismounted from defendant's automobile at the gate was to open the gate through which the automobile would pass to continue the journey contemplated by all the parties to Fort Christmas where plaintiff had left his car.
The guest statutes of many states use the language "riding in" or "while riding in" or "while riding in or upon" the motor vehicle, but our guest statute, Section 320.59, is quite different in that it reads, "no person transported by the owner or operator" * * *, so the authorities cited by appellant where the statutes under consideration read "riding in" or "while riding in" are not applicable or controlling in the case at bar.
The statutes of Michigan and Connecticut and the Rule established by Judicial Decision *148 in Massachusetts are for the purposes of this, the instant case, the same as our guest statute and the Supreme Court of Michigan, in Langford v. Rogers, 278 Mich. 310, 270 N.W. 692, 695, in construing the Michigan statute, said:
"A `guest' within the meaning of the Michigan statute here involved may be defined as one who is carried or transported by the owner or operator of the motor vehicle, whether by express invitation or by implied consent or invitation. So long as the party transported accepts the hospitality of the owner or driver, or is carried or transported by reason of an implied invitation of such owner or operator of the motor vehicle, as in this case, for his own entertainment, pleasure, and enjoyment, without compensating the owner of the vehicle, he is a guest within the meaning of the statute. * * *"
And the Court further stated,
"Plaintiff's decedent fastened his toboggan to the bobsled and was towed by the motor vehicle at the implied invitation of the owner or operator of the vehicle. He gratefully accepted the friendly indulgence and kindness of the driver of the motor vehicle as a means of conveyance rather than to walk. He rode the toboggan so attached for his own pleasure, for his own purposes, without making any return to or conferring any benefit upon the driver of the motor vehicle. He was a grateful recipient of the natural and acceptable generosity of the driver thereof. Plaintiff's decedent was a guest within the meaning of the Michigan statute. He was a person `transported by the owner or operator of a motor vehicle as his guest without payment for such transportation,' * * and as such, by the express terms of the statute, his personal representative is denied a right of action except for gross negligence or willful and wanton misconduct of the owner or operator of such motor vehicle causing decedent's death. Such gross negligence or wanton and willful misconduct is not claimed or proved."
And in Castle v. McKeown, 327 Mich. 518, 42 N.W.2d 733, 734, the Supreme Court of Michigan said,
"Plaintiff Ella Castle was injured when the car of defendant Charles McKeown ran over her. The parties, who had known each other for some years, left Lansing together one summer Sunday afternoon. They drove in the McKeown car to Lake Lansing, where they spent the remainder of the day and ate the usual park refreshments.
"While en route home, after dark, Mrs. Castle told McKeown that she was ill and asked him to stop the car. He apparently did not hear her, but did stop shortly thereafter to examine his rear tire which he thought was flat. The car was then at the side of a country road on a slight up-grade, with the motor running and the emergency brake not set. Both parties left the car. Mrs. Castle claims that she went to a shed in a nearby field. When she returned in a few minutes, McKeown was not in the car. She opened the door on the right side and put one foot on the running board. As she was about to enter, the car moved and she was thrown under it. McKeown then stopped the car, saw Mrs. Castle lying on the ground, helped her in and took her to a hospital. Her legs were seriously injured.
"Plaintiff's declaration is based on negligence. She neither claimed nor proved wilful and wanton misconduct or gross negligence. The trial judge, who heard the case without a jury, found McKeown negligent and Mrs. Castle free from contributory negligence. He held, however, that she was being transported as a guest within the meaning of the Guest Act * * and denied recovery.

*149 "On appeal plaintiff contends that the transportation ceased when the car was stopped and the parties alighted. She argues that the trip had not yet been resumed when she was injured and, therefore, at that time she was not being transported as a guest * *.
"The purpose of the guest act is to protect owners and operators of automobiles from liability for ordinary negligence arising during the gratuitous passage furnished to others. * *
"In the instant case the journey had not ended. The interruption was not over five minutes and was for purposes directly related to the trip and mutually beneficial to both driver and passenger. Transportation from the lake to plaintiff's home was still in progress at the time Mrs. Castle was injured. She was then a guest being transported within the meaning of the statute."
And in Bragdon v. Dinsmore, 312 Mass. 628, 45 N.E.2d 833, 146 A.L.R. 680, decided by the Supreme Court of Massachusetts, where the rule as to the liability of an automobile host or operator to his guest is in substance the same as the Florida Guest Statute, the Court said,
"There was evidence that on October 4, 1941, the defendant drove his automobile to the plaintiff's home where the latter and his wife entered the vehicle. By prearrangement, they and the defendant were to attend a beano party, to be held in Eagles Lodge Hall on West Street, Haverhill. It was the intention of all three `to attend the beano game in the afternoon, have supper together, and then to go home in the defendant's car. It was a social occasion. Each * * * was to pay his own cost for playing beano and eating supper.' Arriving at a parking area on West Street adjacent to the `Lodge Hall,' the defendant started to park his vehicle in a space between two other parked automobiles. He had some difficulty in so doing and `went forward and backed up a couple of times, but could not get in.' The plaintiff said, `Do you want me to help you?' and the defendant said `Yes.' The plaintiff then `got out and went around to the front of the car.' As he stood, with his face toward the front of the defendant's vehicle and with his back to one of the parked automobiles, the defendant `who was stopped about four or five feet away from the plaintiff, suddenly shot forward and pinned the plaintiff to the rear of * * * (a) parked car,' causing the injuries complained of. `There was evidence the defendant was negligent' and that his negligence caused the plaintiff's injuries.
"The judge granted all of the plaintiff's requests for rulings to the effect, so far as here material, that the `host and guest relationship between the plaintiff and the defendant had ceased at the time of the accident.' He denied the requests of the defendant, in substance, that at the time of the plaintiff's injury the relationship just referred to had not ceased, and that the `plaintiff cannot recover unless on proof of gross negligence.' The judge granted the defendant's request for a ruling that as matter of law there was `no evidence that the defendant was guilty of gross negligence.' In connection with his action upon the requested rulings, the judge found certain of the facts hereinbefore set forth as disclosed by the evidence and further found that in `the act of turning the front wheels of * * * (the) automobile, the defendant's foot slipped from the brake pedal to the accelerator,' thus causing the automobile to bound forward and injure the plaintiff. The judge also found that the `gratuitous undertaking, which the defendant assumed, ended when the plaintiff got out of the automobile at * * * (the) parking area,' that the defendant was negligent, that the plaintiff was in the exercise of due care at the time of the accident, and found for the plaintiff.

*150 "The decisive question is whether at the time of the accident the plaintiff was a mere guest, in which event the defendant would not be liable in the absence of gross negligence; or whether that relationship had ceased, in which case the defendant would be liable if guilty of ordinary negligence."
And citing cases, including Ruel v. Langelier, 299 Mass. 240, 12 N.E.2d 735, said,
"In the Ruel case * * *, it was said that the `degree of the defendant's duty does not depend upon the physical position of the plaintiff at the moment of the accident, or upon whether she was then in the defendant's automobile or outside of it, or upon whether in everyday language she would be described as a guest. The degree of the defendant's duty depends upon whether the act of the defendant claimed to be negligent was an act performed in the course of carrying out the gratuitous undertaking which the defendant had assumed.'
"In the instant case the evidence discloses that there was a definite arrangement, entirely gratuitous, to transport the plaintiff and his wife to the hall in question; that they and the defendant were to attend the beano game, have supper, and thereafter the plaintiff and his wife were to be driven home by the defendant in his automobile. It would seem obvious that the parking of the automobile was necessarily incidental to the accomplishment of the gratuitous undertaking, in order to carry out its pre-arranged purpose. * * * In the present case the outward journey had not been ended, the automobile had not been parked, and the gratuitous undertaking had not been completed in an essential part. The action of the judge in granting the plaintiff's requested rulings, that the relationship of host and guest between the parties had ceased at the time of the accident and that proof of gross negligence was not essential to recovery, and in denying the defendant's request to the contrary, was erroneous."
Appellant next contends that the trial court in entering the judgment appealed from erred in finding and holding that defendant was not guilty of gross negligence and in entering the judgment appealed from.
In Brown v. Roach, Fla., 67 So.2d 201, 203, when considering a case brought under Section 320.59, Florida Statutes, F.S.A., the Court said,
"The question of what constitutes `gross negligence or wilful and wanton misconduct of the owner or operator' of a motor vehicle has been before this court many times and this court is still committed to the rule that `gross negligence' and `wilful and wanton misconduct' are synonymous."
citing Cormier v. Williams, 148 Fla. 201, 4 So.2d 525; Dexter v. Green, Fla., 55 So.2d 548; DeWald v. Quarnstrom, Fla., 60 So.2d 919, and then said,
"So, the act complained of must be of such character that the operator would know, or should know, that, by doing the act in the manner done and at the time alleged, he placed others in danger of injury. All the circumstances of each particular case, that is, every act or omission must be considered in determining whether liability exists."
Applying the above cited definition of what constitutes gross negligence and wilful and wanton misconduct under our Guest Statute to the evidence in the instant case, we think it is clear that the evidence was not sufficient to constitute gross negligence or wilful and wanton misconduct and that the trial court was without error in so holding, and having reached this conclusion, we think no error was committed by the trial court in entering the judgment appealed from without the intervention of a jury.
See, Cormier v. Williams, 148 Fla. 201, 4 So.2d 525; Koger v. Hollahan, 144 Fla. 779, 198 So. 685, 131 A.L.R. 886.
*151 See also, Ling v. Edenfield, 5 Cir., 211 F.2d 705.
We have considered all other questions raised by appellant by his assignments of error or briefs and are of the opinion that no reversible error has been made to appear and that the judgment appealed from should be affirmed. It is so ordered.
DREW, C.J., and TERRELL, THOMAS and SEBRING, JJ., concur.
ROBERTS, J., dissents.
THORNAL, J., not participating.